Pearly WILSON, et al.,
Plaintiffs–Appellants,

v.

Richard SEITER, et al.,
Defendants–Appellees.

No. 88–3194.

United States Court of Appeals,
Sixth Circuit.

Submitted Sept. 25, 1989.

Decided Jan. 16, 1990.

Pearly L. Wilson, Nelsonville, Ohio, for plaintiff-appellant Pearly L. Wilson.

Everett Hunt, Jr., Nelsonville, Ohio, Richard A. Chesley, Jones, Day, Reavis & Pogue, Columbus, Ohio, for plaintiff-appellant Everett Hunt, Jr.

Frederick C. Schoch, Asst. Atty. Gen., Office of the Atty. Gen. of Ohio, Columbus, Ohio, for defendants-appellees.

Before KRUPANSKY and WELLFORD, Circuit Judges, and HARVEY, Senior District Judge.*

JAMES HARVEY, Senior District Judge.

Appellants are inmates at Hocking Correctional Facility (HCF), a medium security prison located in Nelsonville, Ohio. On August 28, 1986, appellants filed a complaint in the United States District Court for the Southern District of Ohio, claiming violations of the cruel and unusual punishments clause of the eighth amendment of the United States Constitution. The claimed violations arose from allegedly unfit confinement conditions; specifically overcrowding, excessive noise, inadequate storage, inadequate heating and cooling, unclean lavatories, improper classification of prisoners, and unsanitary eating conditions.

On cross-motions for summary judgment, appellants and appellees filed affidavits in support of their respective positions. Appellants' affidavits, and those of five additional inmates, essentially recite the alleged conditions of confinement as depriving them of their eighth amendment rights. Moreover, the affidavits of inmates Bock, Wilson, and Hunt contend that they contacted prison officials regarding the pertinent conditions, but that the officials took no action in response thereto.

Appellees' affidavits, filed both in response to appellants' summary judgment motion and in support of their own summary judgment motion, basically disclose efforts taken by prison personnel regarding physical and medical conditions within HCF, and partially refute the appellants' specific claims concerning conditions at the prison. Additionally, appellees filed the affidavit of the staff counsel for the Ohio Judicial Conference, containing an article recounting his observations following a

---

* Honorable James Harvey, United States Senior District Judge for the Eastern District of Michigan, sitting by designation.

tour of the facility, respecting conditions at HCF.

In granting appellees' motion, the district court initially found that the eighth amendment requires states to furnish inmates with reasonably adequate food, clothing, shelter, sanitation, medical care and personal safety. Next, the district court noted that appellants, in order to prove an eighth amendment violation arising from conditions of confinement, must demonstrate "obduracy and wantonness, not inadvertence or error in good faith" on the part of the prison officials. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).

Reviewing all of the affidavits in light of these standards, the district court concluded that appellants failed to establish a genuine issue of material fact, and that judgment should properly enter in appellees' favor as a matter of law. Briefly, the trial court concluded that the complained-of conditions exhibited no obduracy or wantonness on the appellees' parts. Furthermore, the district court examined each complained-of condition discretely, and in several instances found appellants' claims meritless given appellees' affidavits. Particularly, the district court dismissed averments in appellants' supporting affidavits concerning confinement with physically-ill inmates, cleanliness of lavatories, noise levels, heating and cooling, ventilation, eating conditions, and general sanitation on the strength of contrary information contained in appellees' affidavits.

Appellants now contend that the district court improperly granted the appellees' summary judgment motion, in that genuine issues of material fact exist concerning confinement conditions, and that therefore the district court could not, as a matter of law, enter judgment.

## I.

District courts may enter summary judgment in a movant's favor upon a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[A] party seeking

summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant need not, however, "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (emphasis in original).

"As to materiality, the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once materiality of a fact is established, district courts must determine whether a genuine issue regarding that fact exists in the record. In order to demonstrate the genuineness of any issue of material fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to [that] material fact[ ]." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, "[i]f the evidence [regarding existence of a genuine issue of material fact] is merely colorable, ..., or is not significantly probative, ..., summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Finally, "[o]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356, quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

## II.

■ Appellants argue that genuine issues of material fact remain regarding confinement conditions at HFC, urging that the district court improperly weighed the affidavits of appellees against those of appellants in concluding that the confinement conditions did not violate appellants' eighth

amendment rights. Clearly, confinement conditions are material given the substantive law surrounding eighth amendment prisoner claims. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1982). Moreover, appellants' affidavits are more than colorable, and obviously place the conditions surrounding confinement in issue. Several circuits have found eighth amendment violations arising from conditions similar to those alleged by the appellants. *See, e.g., French v. Owens*, 777 F.2d 1250 (7th Cir.1985), *cert. denied*, 479 U.S. 817, 107 S.Ct. 77, 93 L.Ed.2d 32 (1986); *Cody v. Hillard*, 799 F.2d 447, *Reh'g granted* (en banc), 804 F.2d 440 (8th Cir.1986); *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir.1985). To the extent, therefore, that the district court adopted the findings in appellees' affidavits in concluding that the HFC's confinement conditions did not deprive appellants of their eighth amendment rights, the district court committed error. As stated in *Anderson*, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249, 106 S.Ct. at 2511.

### III.

Nevertheless, the appellants' affidavits, even if unopposed, may be insufficient to support a claimed eighth amendment violation. We are able to identify eight specific conditions that appellants assert amount to infliction of cruel and unusual punishment: (1) unsanitary eating conditions; (2) inadequate heating and cooling; (3) housing with mentally ill inmates; (4) housing with physically ill inmates; (5) inadequate ventilation; (6) excessive noise; (7) insect infestation; and (8) overcrowding. Since appellees' affidavits refute, to some degree, appellants' claims concerning these conditions, genuine issues of fact exist regarding same. Our task, then, is to determine whether these issues are material, requiring an examination of the substantive law regarding eighth amendment confinement conditions claims.

*Rhodes, supra*, sets forth a flexible standard for ascertaining whether prison conditions amount to cruel and unusual punishment. In evaluating prison conditions, we recognize that the eighth amendment "draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society." *Id.* 452 U.S. at 346, 101 S.Ct. at 2399, (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion)). Thus, "[c]onditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Id.* 452 U.S. at 347, 101 S.Ct. at 2399. Yet, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional," and "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

Subsequent to *Rhodes*, this circuit has interpreted its language as requiring an examination of "all the prison's conditions and circumstances, rather than isolated conditions and events, when addressing eighth amendment claims." *Walker v. Mintzes*, 771 F.2d 920, 925 (6th Cir.1985). Moreover, "[i]n certain extreme circumstances the totality itself may amount to an eighth amendment violation, but there still must exist a specific condition on which to base the eighth amendment claim." *Id.* Specific conditions found to violate the eighth amendment include the denial of adequate access to shower facilities, *Preston v. Thompson*, 589 F.2d 300 (7th Cir. 1978); denial of medical treatment, *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); overcrowding, *Cody v. Hillard*, 799 F.2d 447 (8th Cir.1986); threats to safety, *French v. Owens*, 777 F.2d 1250 (7th Cir.1985), *cert. denied*, 479 U.S. 817, 107 S.Ct. 77, 93 L.Ed.2d 32 (1986); vermin infestation, *Hoptowit v. Spellman*, 753 F.2d 779 (9th Cir.1985); inadequate lighting, *id.;* inadequate ventilation, *id.*, unsanitary eating conditions, *Ramos v. Lamm*, 639 F.2d 559 (10th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68

L.Ed.2d 239 (1981); and housing of inmates with known dangerous individuals, *Shrader v. White,* 761 F.2d 975 (4th Cir.1985).

Application of this precedent to the appellants' allegations leads us to conclude that some, but not all, of the complained-of conditions suggest the type of "seriously inadequate and indecent surroundings" necessary to establish an eighth amendment violation. *See Birrell v. Brown,* 867 F.2d 956, 958 (6th Cir.1989). Concerning, however, appellants' claims regarding inadequate cooling, housing with mentally ill inmates, and overcrowding, we believe that these allegations, even if true, fail to establish constitutionally violative conditions.

■ First, appellants suggest that their exposure during summer months to temperatures as high as 95 degrees represents cruel and unusual punishment. Undeniably, excessive exposure to heat may in some instances constitute cruel and unusual punishment, yet we are unaware of any precedent holding that occasional exposure to 95 degree heat presents such an instance. We therefore reject this specific condition as a basis for appellants' claim.

■ Second, appellants contend that appellees' practice of housing mentally ill inmates in their dorm places them in fear for their safety. Appellants do not, though, cite any particular episodes of violence supporting this fear. In *Shrader, supra,* the court accepted a magistrate's finding that

> [o]ne key to understanding when the risk of violence reaches constitutional dimensions is its effect on the inmate population.... In this context, it is not necessary that an inmate establish that he has been the subject of an actual attack, but he must establish that he lives in *reasonable* fear of assaults from other inmates ... and that the fear results in significant mental pain....

761 F.2d at 978, 979 (emphasis added). The appellants present solely subjective feelings as a basis for their alleged fear of violence from mentally ill inmates. While *Shrader* does not mandate that a prisoner, to establish an eighth amendment violation, demonstrate that he has been the victim of an actual attack, it does require *reasonable* fear. The absence of allegations of prior physical violence involving any inmate supporting appellants' claims leads us to conclude that their fear is not reasonable. Their eighth amendment claim cannot therefore rest on allegations of improper housing of mentally ill inmates.

■ Finally, on the issue of overcrowding, appellants cite to the fact that inmates are double-bunked, and that each receives approximately 50 square feet of living space within the dorm. While overcrowding is generally acknowledged as a potential basis for an eighth amendment violation, courts examining this problem review all of the circumstances surrounding confinement to ascertain whether prison population density inflicts cruel and unusual punishment. *See Rhodes,* 452 U.S. at 348–49, 101 S.Ct. at 2400; *Cody,* 799 F.2d at 449–50; *French,* 777 F.2d at 1252. If conditions impacting upon the quality of confinement exacerbate an already overcrowded condition, cruel and unusual punishment may exist. The record before us, undisputed by appellants, establishes that while the inmates may indeed have only 50 or so square feet of living space each within their dorm, the inmates also have access during the day to a television lounge, gymnasium, yard, weight room, billiards table, and library. This is not, therefore, a situation wherein the inmates allege constant exposure to overcrowding. We therefore reject any eighth amendment claim on this basis.

Having found that appellants' claims cannot arise from specific conditions of inadequate cooling, housing with mentally ill inmates, and overcrowding, we now examine whether the remaining conditions alleged are adequate to sustain the appellants' claim.

## IV.

Appellees argue that even if appellants allege conditions adequate to support an eighth amendment claim, their affidavits fail to refute the evidence contained in appellees' affidavits of conscious efforts taken by prison officials concerning the rele-

vant conditions. Since the Supreme Court, in *Whitley v. Albers, supra,* has directed that "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause," 475 U.S. at 319, 106 S.Ct. at 1084, appellees urge that the absence of facts rebutting evidence indicating efforts taken to assume minimally decent confinement conditions demonstrates an absence of any genuine issue as to this material fact.

■ Initially, it is noteworthy that we have applied *Whitley's* "obduracy and wantonness" standard to eighth amendment challenges to confinement conditions. In *Birrell v. Brown,* 867 F.2d 956 (6th Cir.1989), we noted that "[i]n addition to producing evidence of seriously inadequate and indecent surroundings, a plaintiff must also establish that the conditions are the result of recklessness by prison officials and not mere negligence or oversight." *Id.* at 958. The importance of this application of *Whitley* may be merely semantic, yet it establishes that at least in this circuit, the *Whitley* standard is not confined to the facts of that case; that is, to suits alleging use of excessive force in an effort to restore prison order.

Having concluded that a showing of obduracy and wantonness is material to appellants' claims, the critical, and determinative, question becomes whether appellants' affidavits place this fact in issue. Resolution of this question necessitates an examination of whether such affidavits, although not placing appellants' state of mind squarely in issue, nevertheless imply the conduct required under *Whitley.* That is, could "a fair-minded jury ... return a verdict for [appellants] on the evidence presented." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. at 2512.

■ We are aware that state of mind is typically not a proper issue for resolution on summary judgment. *See* 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2730 (1983); *Archer v. Dutcher,* 733 F.2d 14 (2d Cir.1984); *Slay v. Alabama,* 636 F.2d 1045, *reh'g denied,* 642 F.2d 1210 (5th Cir.1981). Appellees con-

tend, however, that the appellants' failure to present any evidence directly refuting appellees statements suggesting affirmative efforts to maintain habitable conditions at HCF demonstrates that no genuine issue of fact exists regarding these efforts. Moreover, appellees assert that such efforts evidence a lack of the requisite "obduracy and wantonness" necessary for an eighth amendment claim.

■ Appellees' argument, although logically attractive, ignores the well-established principle that upon a motion for summary judgment, all reasonable inferences from underlying facts must be drawn in the nonmovant's favor. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Furthermore, "[i]nasmuch as a determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable men might differ—a function traditionally left to the jury—summary judgment often will be an inappropriate means of resolving an issue of this character." Wright, Miller & Kane, *supra,* at § 2730, p. 238 (footnote omitted). The question we must address, therefore, is whether the appellants' affidavits, while not directly contradicting the appellees' affidavits, nevertheless contain facts reasonably implying that the appellees acted with obduracy and wantonness.

■ Importantly, the appellants do not contend that the appellees have taken no efforts to provide them with minimally decent confinement conditions. Rather, appellants' complaints are aimed at the results of those efforts. The undisputed record indicates that the HCF unit manager has adopted specific affirmative measures to reduce noise levels, has had heaters serviced, provides inmates with an extra blanket during winter months, has installed exhaust fans for improved ventilation, requires the cleaning of lavatories and kitchen on a daily basis, and has contracted with an exterminator to treat HCF for pests on a twice-monthly basis. The appellants' position, apparently, is that despite these actions, prison conditions remain unacceptable.

*Rhodes* and its progeny make clear that confinement conditions may constitute cruel and unusual punishment only if such conditions "compose the punishment at issue." 452 U.S. at 347, 101 S.Ct. at 2399. Nothing in the appellants' affidavits implies that the appellees used confinement conditions to punish the appellants. To the contrary, the evidence shows action on the appellees' behalf to maintain decent conditions at HCF. Additionally, the *Whitley* standard of obduracy and wantonness requires behavior marked by persistent malicious cruelty. The record before us simply fails to assert facts suggesting such behavior. At best, appellants' claim evidences negligence on appellees' parts in implementing standards for maintaining conditions. Negligence, clearly, is inadequate to support an eighth amendment claim. *See Birrell, supra,* at 958.

### V.

In conclusion, we find that appellants' allegations regarding inadequate cooling, housing with mentally ill inmates, and overcrowding are insufficient to provide a specific basis for an eighth amendment violation. Additionally, we find that appellants' affidavits, in that they fail to raise a reasonable inference of obduracy and wantonness on the appellees' behalf, present no genuine issue as to that material fact. Thus, we hold that the district court properly entered summary judgment in appellees' favor, and therefore AFFIRM.