**INTERNATIONAL SHORTSTOP, INC.,
and Sam Talkington,
Plaintiffs–Appellants,**

v.

**RALLY'S, INC., Defendant–Appellee.**

No. 90–8563.

United States Court of Appeals,
Fifth Circuit.

Aug. 29, 1991.

Shannon H. Ratliff, Stuart N. Whitlow, Marc O. Kinisely, McGinnis, Lochridge & Kilgore, Austin, Tex., for plaintiffs-appellants.

Douglas L. Hilleboe, Scott R. Kidd, Brown, Maroney & Oaks Hartline, Austin, Tex., for defendant-appellee.

Before GOLDBERG, SMITH, and BARKSDALE, Circuit Judges.

GOLDBERG, Circuit Judge:

In this trade-dress case, we must determine whether it was too precocious of the district court to strip the plaintiffs of a jury

trial on their tortious interference claim before the facts were more fully clothed.

## I. BACKGROUND MATERIAL

This case is on appeal following the entry of summary judgment by the district court. Concluding that there were no genuine disputes of material fact with respect to the defendants' affirmative defense, the district court held that the defendants were entitled to a judgment in their favor as a matter of law. On appeal, the plaintiffs contend that the district court should not have entered summary judgment until the outstanding discovery was complete. Plaintiffs also contest the district court's interpretation of the relevant substantive law and its conclusion that on the record before the court there were no disputed issues of fact precluding summary judgment.

Because this matter is before the court following summary judgment, we are obliged to construe all the evidence and reasonable inferences deduced therefrom in a light most favorable to the plaintiffs, the nonmoving party in the court below.

### A. The Fact Pattern

Plaintiffs are International Shortstop, Inc. and its president Sam Talkington (collectively referred to as "Shortstop"); the defendant is Rally's, Inc. ("Rally's"). They are direct competitors in the business of fast-food, take-out restaurants, specializing in the rapid service of hamburgers and other products of the culinary art sold at drive-through windows.

Shortstop was formed by Sam Talkington in 1984. Sometime in August 1988, Talkington began preliminary negotiations with Al Copeland for the sale of Shortstop to Copeland. Copeland was the majority shareholder of A. Copeland Enterprises, Inc., owner of the Popeye's fast-food chicken chain. Talkington hoped that the merger would offer Shortstop a network of franchise locations, franchisees, and other resources which would propel Shortstop's growth. At a meeting in late August, Copeland and Talkington agreed that Copeland would purchase Shortstop for $1.2 million. Both men believed that they reached a firm agreement concerning the Copeland–Shortstop purchase. They relegated to their financial officers the task of arranging for the structure of the deal. In late December the two men confirmed in a conversation that the Copeland–Shortstop deal would close sometime shortly after the completion of Copeland's takeover of the Church's Fried Chicken chain, which had begun in the fall of 1988.

Rally's was formed in 1985 and opened its first restaurant in Jeffersonville, Indiana, eighteen months after Shortstop opened its restaurant in Austin, Texas. By the fall of 1988, Rally's had several restaurant locations, including Miami, Florida, Shreveport, Louisiana, and Little Rock, Arkansas. Rally's began receiving complaints from these franchisees that Shortstop franchises were copying Rally's' building appearance, generating confusion among Rally's customers. Specifically, in January 1989, the Arkansas franchisee contacted Richard Sherman, President of Rally's (formerly president of Church's), to complain that a Shortstop franchise under construction looked very similar to the Rally's franchise.

In December 1988, Sherman had contacted a lawyer in connection with the alleged trade-dress infringement. This was not the first time that Rally's entertained the notion of protecting its perceived trade-dress: over the course of the previous three years, Rally's had pursued infringement claims against eight other companies, excluding Shortstop, and indeed, Rally's had appreciable success. It won two of the lawsuits it filed, settled three cases, and had pending suits against the remaining companies.

Meanwhile, throughout 1988, Sherman had expressed interest in expanding Rally's by purchasing surplus property from Church's. Aware of the pending takeover of Church's by Copeland, Sherman contacted Copeland in February 1989 to discuss the purchase of Church's locations upon consummation of the takeover. They met on March 1, 1989, to discuss the purchase. Sherman was already aware that Copeland had a general interest in also acquiring

Shortstop but was apparently not aware of the precise negotiations which had transpired between Talkington and Copeland. During the March 1st meeting, however, Copeland told Sherman of the Copeland–Shortstop agreement. In response, Sherman commented that Shortstop was a "third tier" company that did not have a very strong franchise, system, and that Copeland would be far better off associating with Rally's than with Shortstop. No mention was made at that meeting that Rally's was contemplating a trade-dress infringement lawsuit against Shortstop.

The following week, Sherman inquired of Jim Flynn, president of Copeland Enterprises, regarding the availability of the surplus Church's locations. He also asked about the status of the Copeland–Shortstop deal.

Between March 7 and March 17, 1989, Sherman conferred with his counsel about instituting a trade-dress infringement action in Arkansas. According to Rally's, they had contemplated bringing such an action since December 1988, but there had been some delay in pursuing the action because counsel for Rally's was tied up with other, unrelated matters. In any event, Rally's' counsel soon contacted Talkington (Shortstop's president) to advise him of Rally's' intentions to file a trade-dress infringement action in Arkansas.[1] This was the first Talkington had heard of Rally's' concerns about alleged trade-dress infringement by Shortstop.

On March 22, 1989, Sherman and Talkington discussed the lawsuit. Sherman indicated that Rally's had filed the lawsuit on March 20, but that it had nothing to do with the Copeland–Shortstop deal. Settlement efforts failed. On the same day, Sherman called Flynn of Copeland Enter-

prises to congratulate him on the successful takeover of Church's. He also mentioned to Flynn that Rally's had instituted the Arkansas lawsuit against Shortstop, but indicated that the litigation had nothing to do with the Copeland–Shortstop deal. In fact, the lawsuit was not filed until the following day (the "Arkansas lawsuit").

Because of Rally's' Arkansas lawsuit against Shortstop, Copeland declined to consummate the purchase of Shortstop. In the words of Copeland himself, the lawsuit "interfered with the deal." In Copeland's view, the lawsuit threatened to undermine Copeland's intended expansion of Shortstop because if Rally's succeeded, Copeland would have been forced to change the image of all of the Shortstop restaurants. He also observed that "[f]ranchisees don't want to buy into companies that have major lawsuits."

## B. The Procedural Weave

Shortstop filed the instant lawsuit in Texas state court alleging, *inter alia,* that Rally's' Arkansas lawsuit was filed in bad faith and constituted tortious interference with the Copeland–Shortstop agreement.[2]

Rally's removed the action to federal district court on August 11, 1989. Rally's promptly moved the court to dismiss the complaint. Shortstop amended the complaint, and Rally's again moved to dismiss. Once the motion was fully briefed, the court took the motion under advisement and by order dated May 7, 1990, denied the motion. Simultaneously, the district court set the case on the trial calendar commencing September 24, 1990, with a discovery cut-off deadline of August 13, 1990. The court admonished the parties that "Motions

---

1. Rally's' counsel would not represent Rally's because of conflicts of interest arising from counsel's previous representation of Shortstop. Accordingly, they contacted an Arkansas law firm to handle the matter, sent it copies of pleadings from other trade-dress lawsuits initiated by Rally's, and took no further action. Two days later, the Arkansas law firm filed a lawsuit on behalf of Rally's against Shortstop, alleging trade-dress infringement in connection with the Little Rock, Arkansas restaurant.

2. Shortstop also alleged that Sherman's statements to Copeland disparaging Shortstop ("third tier" company, etc.) were separately actionable under a theory of tortious interference. The district court entered summary judgment against Shortstop on that claim but Shortstop has abandoned that claim in this appeal.

to Compel, Motions for Protective Order, and similar motions" were "discouraged."

The parties proceeded with discovery, which had already been underway since early in the case. On June 28, 1990, before the discovery cut-off, Rally's moved for summary judgment averring the absence of a genuine dispute of material facts. Specifically, Rally's contended that it was privileged as a matter of law to file the Arkansas lawsuit and that therefore, the Arkansas lawsuit could not form the basis of a tortious interference cause of action. In Rally's' view, the filing of a lawsuit, whether in bad faith or otherwise, was *absolutely* privileged. Rally's also maintained that Shortstop's cause of action necessarily would fail because the evidence in the record did not establish the requisite elements of tortious interference, namely, the existence of a *contract* between Copeland and Shortstop, willful and intentional interference by Rally's, proximate causation, and damages. Shortstop filed a timely response to the merits of Rally's' motion for summary judgment, but indicated in a footnote to its memorandum that several depositions were still pending.

Meanwhile, the parties were unable to resolve a discovery dispute: Shortstop sought from Rally's and its trade-dress lawyers disclosure of information concerning the Arkansas lawsuit in order to establish Rally's' bad faith in proceeding with that lawsuit. Rally's had refused to provide that information, invoking the attorney-client privilege and the attorney work-product doctrine. Left with no choice but to seek court intervention, Rally's moved the court on July 23, 1990 to quash and for a protective order; in turn, Shortstop moved to compel the discovery. All of the discovery motions were referred by the district court judge to a United States magistrate judge for resolution. The magistrate judge granted Shortstop's motion to compel on August 10, three days before the dis-

covery cut-off, and ordered the discovery to proceed.

By August 13, the discovery cut-off date, Shortstop had not completed the necessary discovery, so Shortstop filed an amended motion to extend discovery.[3] Four days later, Shortstop moved the district court again to extend the discovery deadline and also requested permission to file a supplemental brief in opposition to Rally's' motion for summary judgment. Shortstop alerted the district court to the proceedings before the magistrate judge, indicating that it expected to obtain, through the additional discovery, attorney-client evidence undermining Rally's' claimed privilege to file the Arkansas lawsuit. On the same day, Rally's filed an appeal to the district court from the magistrate judge's discovery order and asked the court to stay discovery pending the appeal.[4]

The court never ruled on these discovery matters. Instead, on August 23, the court filed its memorandum opinion and order on Rally's' motion for summary judgment. Without making reference to the pending discovery matters, the district court found that there was no dispute as to any material issues of fact regarding Rally's' privilege to file the Arkansas lawsuit (which allegedly interfered with the Copeland–Shortstop deal). The district court studied with great care the relevant body of Texas law and held that the privilege that Rally's was asserting was *qualified*, not *absolute* as Rally's contended. The court interpreted the privilege as being qualified by a "good faith" limitation: a lawsuit is privileged only if it asserts a "colorable claim" or if the party filing the lawsuit has a good faith belief that it asserts a colorable claim. The court concluded that the record amply supported Rally's' assertion of the qualified privilege; in the court's view, there was no evidence in the record contradicting Rally's' evidence that it filed the Arkansas lawsuit believing in good faith that it was asserting a colorable claim.[5] Although the

---

**3.** On August 9, Shortstop had moved the court to extend discovery indicating that Rally's consented to the extension in part only.

**4.** The discovery matter concerning the disclosure of the attorney-client materials is not before us for consideration in this appeal.

**5.** The court did find a dispute of fact as to whether Rally's was motivated by tortious in-

privilege was a complete defense to the tortious interference claim, the district court nevertheless denied the motion for summary judgment. The court concluded that there were genuine disputes as to the facts germane to the elements of Shortstop's tortious interference claim precluding summary judgment. On Rally's' motion for reconsideration, however, the court entered summary judgment, apparently recognizing that its holding that Rally's held a qualified privilege as a matter of law vitiated Shortstop's interference claim in its entirety.

Shortstop appeals, permanently pressing its argument that the district court misinterpreted Texas law on the issue of privilege to tortiously interfere with a contract. Shortstop maintains that the privilege is qualified by the limitation that the allegedly tortious lawsuit be filed in good faith, which according to Shortstop means without malicious motive. In Shortstop's view, even if the party filing the lawsuit has a good faith belief that the claim asserted is colorable, the party may not file the lawsuit for the sole purpose of interfering with another's contract. In addition, Shortstop avers that even if the district court correctly interpreted the privilege under Texas law, there existed on the record before the court disputed issues of material fact as to Rally's' alleged "good faith" in filing the Arkansas lawsuit. Finally, Shortstop argues that the court erred by failing to permit the additional discovery which the magistrate judge had ordered; according to Shortstop, the discovery could have elicited evidence undermining Rally's' privilege.

## II. LEGAL FABRIC

■ As this case is before us on appeal from the entry of summary judgment, we review the record *de novo*. *Fireman's Fund Insurance Co. v. Murchison*, 937 F.2d 204, 207 (5th Cir.1991). We are guided by the procedural framework of Rule 56 of the Federal Rules of Civil Procedure and two recent Supreme Court cases ironing

out its wrinkles. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A. Judgment in Summary Fashion

■ Summary judgment is appropriate when the moving party, in a properly supported motion, demonstrates that there is "no genuine issue of material fact," *Anderson*, 106 S.Ct. at 2510, and that it is entitled to judgment in its favor as a matter of law. Fed.R.Civ.P. 56(c). Confronted with such a motion, the nonmoving party must direct the court's attention to evidence in the record which demonstrates that it can satisfy a "fair-minded jury" that it is entitled to verdict in its favor. *Anderson*, 106 S.Ct. at 2512. This can be accomplished by tendering affidavits, depositions, and other materials which provide evidentiary support for its claim. The nonmoving party cannot rest on the allegations in its complaint. Fed.R.Civ.P. 56(e). If the nonmoving party responds satisfactorily, the motion for summary judgment is denied, and the case proceeds to trial.

■ In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion. *Anderson*, 106 S.Ct. at 2513; *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir. 1987). Indeed, even if the moving party comes forward with an abundance of evidence supporting its theory of the case, the nonmoving party may nevertheless defeat the motion by countering with evidence of its own, which, if credited by the fact-finder, would entitle the nonmoving party to a verdict in its favor. Or, the non-moving party can defeat the motion by demonstrating that the evidence tendered by the mov-

---

tent. The court considered that factual dispute immaterial in light of its interpretation of Texas law.

ing party is itself laced with contradictions of fact. *Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198 (5th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). Of course, the court need only concern itself with contradictions of salient facts; factual disputes over issues not germane to the claim are simply irrelevant because they are not outcome determinative. The court may grant a motion, immaterial factual disputes notwithstanding. *Anderson*, 106 S.Ct. at 2510.

The application of this procedural mechanism in civil litigation has been remarkably uniform. In the "run-of-the-mill" civil case, the defendant moves for summary judgment on the ground that the evidence in the record demonstrates that it is entitled to a judgment as a matter of law—that should the case proceed to trial, the plaintiff will not sustain its burden of proof and the court will necessarily direct a verdict in its favor.[6] The defendant's summary judgment motion is typically dressed in one of two styles: the defendant may affirmatively offer evidence which undermines one or more of the essential elements of the plaintiff's case; or, the defendant may simply demonstrate that the evidence in the record falls short of establishing an essential element of the plaintiff's case. *Celotex*, 106 S.Ct. at 2548; *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990). Under this latter option, the defendant need not produce evidence of its own because it is the plaintiff that will bear the burden of proof at trial. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986).

In response to a properly supported motion, the plaintiff comes forward with evidence of its own establishing each of the challenged elements of its case. Because factual disputes may not be resolved on motion for summary judgment, the plaintiff need not offer all of the evidence tending to support its case, only enough evidence "from which a jury might return a verdict in [its] favor. If [it] does so, there is a genuine issue of fact that requires a trial." *Anderson*, 106 S.Ct. at 2514.

■ The court then considers the record to determine whether there are any material disputes of fact. If there are any, the court denies the motion. The court's task is relatively straightforward because the nonmoving party, the plaintiff, is entitled to have the evidence considered in the light most favorable to it. Any reservations the court has concerning the evidence will preclude summary judgment. The court should enter summary judgment only if it appears from its review of the record evidence relied upon by the parties that the defendant is entitled to summary judgment as a matter of law. Naturally, if the record is devoid of evidence necessary to sustain plaintiff's burden of proof, the defendant, which bears no burden at all, is entitled to a judgment in its favor.

■ That is the run-of-the-mill case. This case, however, is a suit of a different fabric.[7] Rally's sought summary judgment on the ground that it was privileged as a matter of law to interfere with the Copeland–Shortstop deal. Rally's, the moving party, bore the burden of proof because privilege is an affirmative defense. *See Sterner v. Marathon Oil*, 767 S.W.2d 686 (Tex.1989). Where, as here, the *moving party* bears the burden of proof at trial, it must come forward with evidence which would "entitle it to a directed verdict if the

---

6. The Supreme Court has observed that the summary judgment "standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 106 S.Ct. at 2505.

7. *Anderson* was not a run-of-the-mill case either because it involved issues of "legal malice." In *Anderson*, plaintiff brought a libel action against a magazine company. The magazine company moved for summary judgment on the ground that there was no evidence of "actual malice" as required under First Amendment jurisprudence. *See New York Times v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964). The Court held that the plaintiff could not oppose the motion by merely asserting that "the jury might, and legally could, disbelieve the defendant's denial ... of legal malice." *Anderson*, 106 S.Ct. at 2514.

evidence went uncontroverted at trial." *Golden Rule Ins. Co. v. Lease*, 755 F.Supp. 948, 951 (D.Colo.1991); *cf. Anderson*, 106 S.Ct. at 2512 ("The judge's inquiry, therefore, unavoidably asks ... 'whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"); *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991) ("But—particularly where, as here, the moving party is also the party with the burden of proof on the issue—it is important to remember the nonmoving party must produce its significant, probative evidence only after the movant has satisfied its burden of demonstrating there is no genuine dispute of any material fact."). As in any summary judgment context, the nonmoving party can defeat the motion by merely demonstrating the existence of a genuine dispute of material fact. But because the moving party has the burden of proof under this scenario, the nonmoving party may also defeat the motion by showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party.

The district court in this case interpreted Texas law to provide for a qualified privilege. The court held that a party is privileged to file a lawsuit if it has a good faith belief that he is asserting a colorable claim. Relying principally on Rally's' own assertion of good faith (presumably through the testimony of its president Sherman), the court found:

> no substantial showing to counter Defendant's assertion [that] Defendant filed the Arkansas lawsuit based on the good faith belief [that] Defendant stated a colorable claim. In short, Shortstop has failed to controvert Rally's assertion, and summary judgment evidence, tending to establish Rally's filed that suit in the good faith belief that it had a colorable claim. The Court therefore regards Defendant Rally's defense of privilege conclusively proved.

Memorandum opinion at 14 (R. 588). Thus, the court assessed the evidence tendered and made the determination that a jury would necessarily have accepted Rally's' claim of good faith. Rally's' state of mind was obviously the key to its claimed privilege.

■■■ When state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility. Credibility determinations, of course, are within the province of the fact-finder. Accordingly, we have emphasized repeatedly that cases which turn on the moving party's state of mind are not well-suited for summary judgment. *Ross v. John's Bargain Stores Corp.*, 464 F.2d 111, 115 (5th Cir.1972); *Jones v. Borden Co.*, 430 F.2d 568, 574 (5th Cir.1970); *Riley–Stabler Constr. Co. v. Westinghouse Elec. Corp.*, 401 F.2d 526, 527 (5th Cir. 1968); *accord Miller v. FDIC*, 906 F.2d 972, 974 (4th Cir.1990) ("general rule that summary judgment is seldom appropriate in cases wherein particular states of mind are decisive elements of a claim or defense"); *Wilson v. Seiter*, 893 F.2d 861, 866 (6th Cir.1990) ("We are aware that state of mind is typically not a proper issue for resolution on summary judgment."), *vacated on other grounds*, — U.S. —, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199 (2d Cir.1989) ("Questions of intent, we note, are usually inappropriate for disposition on summary judgment"). This is so because it is particularly difficult for the nonmoving party to challenge the "self-serving testimony" of the moving party without the benefit of trial accessories, namely cross-examination. *See 60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432 (6th Cir.1987) (observing that "the likelihood of self-serving testimony and the necessity for the fact-finder's credibility determinations" make summary judgment inappropriate when state of mind is at issue). Only through *live* cross-examination can the fact-finder observe the demeanor of a witness, and assess his credibility. A cold transcript of a deposition is generally no substitute because it cannot unmask the veracity of a testifying witness clad in a

costume of deception; it cannot unveil that a seemingly well-groomed witness is coming apart at the seams: "that he fidgets when answering critical questions, his eyes shift from the floor to the ceiling, and he manifests all other indicia traditionally attributed to perjurers." *Anderson*, 106 S.Ct. at 2521 (Rehnquist, J., joined by Burger, C.J., dissenting).

 This is not to say that the court can never enter summary judgment when intent or state of mind is at issue, only that the court must recognize that undermining the moving party's professed state of mind is not a simple task. Therefore, the court must be vigilant to draw *every* reasonable inference from the evidence in the record in a light most flattering to the nonmoving party. Summary judgment, to be sure, may be appropriate, "[e]ven in cases where elusive concepts such as motive or intent are at issue, ... if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990); *accord LeFevre v. Space Comm. Co.*, 771 F.2d 421, 423 (10th Cir.1985). The Supreme Court has observed that "discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion. Instead, the [nonmoving party] must present affirmative evidence in order to defeat a properly supported motion for summary judgment" *Anderson*, 106 S.Ct. at 2514. The nonmoving party should come forward with evidence, direct or circumstantial, which would allow for the reasonable inference that the moving party acted with a contrary intent or state of mind. *See Clemente v. Nassau County*, 835 F.2d 1000, 1005 (2d Cir.1987) ("Where, as here, the circumstantial evidence is so minimal and the legal standard so daunting, summary judgment is appropriate even when state of mind is at issue"). Of course, evidence probative of the moving

party's state of mind may be more difficult to procure because it typically is held in the exclusive possession of the moving party.[8]

 A nonmoving party, believing that it needs more time to obtain discovery to respond satisfactorily to a motion for summary judgment, can seek the shelter of Rule 56(f) which provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other orders as is just.

Fed.R.Civ.P. 56(f). To obtain a continuance for additional discovery, the nonmoving party must request it from the district court. *See Childers v. Joseph*, 842 F.2d 689, 693 n. 3 (3d Cir.1988) (court not obligated to allow for additional discovery absent request from non-moving party). The proper but not only way of requesting additional time for discovery is for the nonmoving party to "present an affidavit containing specific facts explaining [its] failure to respond to the adverse party's motion for summary judgment via counter affidavits establishing genuine issues of material fact for trial." *Barfield v. Brierton*, 883 F.2d 923, 930 (11th Cir.1989) (citing *SEC v. Spence & Green Chemical Co.*, 612 F.2d 896, 900 (5th Cir.1980), *cert. denied*, 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981)).

 The nonmoving party's failure to tailor its request for additional discovery to fit Rule 56(f)'s precise measurements does not necessarily foreclose the court's consideration of the request. Although the preferred procedure is to present an affidavit in support of the requested continuance, so long as the nonmoving party indicates to

---

**8.** We recognize that in this case, the moving party bears the burden of proof at trial on the issue of state of mind—that it is Rally's' burden to prove its own good faith belief in the colorability of the Arkansas lawsuit, *not* Shortstop's burden of proving Rally's' bad faith (i.e. lack of good faith) in filing the lawsuit. To the extent that summary judgment is rarely appropriate when state of mind is at issue, it is even less fashionable when the *moving party* bears the burden of proving its own state of mind.

the court by "some equivalent statement, preferably in writing" of its need for additional discovery, the nonmoving party is deemed to have invoked the rule. *Fontenot v. Upjohn Co.*, 780 F.2d at 1194 (citing *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1146 (5th Cir.) (*en banc*), *cert. denied*, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973)); *accord Radich v. Goode*, 886 F.2d 1391, 1399 (3d Cir.1989) (Hutchinson, J., concurring); *Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir.1988). The nonmoving party must show how the additional discovery will defeat the summary judgment motion, that is, will create a genuine dispute as to a material fact, *Washington v. Allstate Insurance Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990), and "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Spence & Green*, 612 F.2d at 901. If the additional discovery will not likely generate evidence germane to the summary judgment motion, the district court may, in its discretion, proceed to rule on the motion without further ado. *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990); *Netto v. Amtrak*, 863 F.2d 1210, 1216 (5th Cir.1989); *accord Contemporary Mission Inc. v. New York Times Co., Inc.*, 665 F.Supp. 248, 269 (S.D.N.Y.1987) ("Plaintiffs have not met their burden of showing how the deposition ... would produce material evidence which would be potentially favorable to them"), *aff'd*, 842 F.2d 612 (2d Cir.), *cert. denied*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988).

 The district court's discretion to deny the requested extension is not entirely unfettered. Because of the difficulties attendant to rebutting the professed state of mind of a party-opponent through summary judgment evidence, the district court should be generous in its allowance of discovery requests aimed at uncovering evidence of the moving party's state of mind. Oftentimes, as was the case here, the evidence which the nonmoving party could offer to create a factual dispute is in the exclusive possession of the moving party. Where the party opposing the summary judgment informs the court that its diligent efforts to obtain evidence from the moving party have been unsuccessful, "a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." *Sames v. Gable*, 732 F.2d 49, 51 (3d Cir.1984) (quoting *Costlow v. United States*, 552 F.2d 560, 564 (3d Cir.1977)); *accord Snook*, 859 F.2d at 871 ("the interests of justice will sometimes *require* a district court to postpone its ruling on a motion for summary judgment") (emphasis added). If, however, the nonmoving party has not diligently pursued discovery of that evidence, the court need not accommodate the nonmoving party's belated request. *C–B Kenworth Inc. v. General Motors Corp.*, 118 F.R.D. 14, 16 (D.Me.1987) ("Only parties who have diligently pursued discovery are entitled to the protections afforded under Rule 56(f).").

The Supreme Court itself has cautioned against granting summary judgment prematurely. In *Anderson*, the Court indicated that the nonmoving party's obligation to respond to a motion for summary judgment "is qualified by Rule 56(f)'s provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 106 S.Ct. at 2511 n. 11. The Court stated that the nonmoving party must present affirmative evidence in response to a summary judgment motion, "even where the evidence is likely to be within the possession of the defendant, *as long as the plaintiff has had a full opportunity to conduct discovery.*" *Id.* 106 S.Ct. at 2514 (emphasis added).

 Although we are reluctant to "substitute our judgment concerning the necessity of a continuance for that of the district court," *Fontenot*, 780 F.2d at 1194, we believe that the district court in this case should have deferred ruling on the motion for summary judgment until the necessary discovery was complete. Although Shortstop did not strictly conform to Rule 56(f)'s procedures, we are satisfied that by its multiple filings *prior to* the court's ruling on the motion for summary

judgment, Shortstop adequately invoked Rule 56(f). In its initial response to the motion for summary judgment, Shortstop noted that several depositions were still outstanding. Later, but *prior to* the court's ruling on the motion for summary judgment, Shortstop thrice sought a continuance of discovery and promptly alerted the district court to the discovery proceedings before the magistrate judge, requesting leave to file a supplemental memorandum in opposition to the motion for summary judgment.

Furthermore, Shortstop explained that the discovery it sought pertained directly to the privilege issue which was the focus of Rally's' motion. That the contemplated discovery was material to the summary judgment motion is confirmed by the magistrate judge's ruling in favor of Shortstop on the discovery matters. Shortstop sought evidence of the communications between Rally's and its counsel in connection with the filing of the Arkansas lawsuit. Plainly, that evidence might well shed light on whether Rally's had a good faith belief that the Arkansas lawsuit asserted a colorable claim.

Moreover, there is no indication that Shortstop was dilatory in seeking the discovery. To the contrary, Rally's consistently interposed its objections to Shortstop's discovery requests on the ground of attorney client privilege. Ultimately, the parties turned to the court for direction.[9] The district judge referred the matters to the magistrate judge, who ruled that Rally's had waived its attorney client privilege and could no longer object to the disclosure of the evidence that Shortstop requested. Obviously, the delay in obtaining the discovery stemmed from Rally's' efforts to cling to its legal position, not from any dilatory tactics by Shortstop.

We conclude that the district court should have allowed Shortstop to complete discovery before proceeding to rule on Rally's' motion.[10] Summary judgment is a lethal weapon. We must afford prospective victims some protective armor if we expect them to properly defend against it.

### B. Victoria's Secret

In entering summary judgment against Shortstop on its tortious interference claim, the court canvassed the entire wardrobe of Texas suits on the privilege issue and, after a thorough analysis, concluded that a litigant is privileged to file a lawsuit which interferes with the contract of another so long as the litigant is asserting a "colorable claim," or at least believes in good faith that it is asserting a colorable claim. Recognizing that colorable claims come in many hues, the court did not "attempt to define what showing is necessary to establish conclusively that a claim is objectively colorable." Memorandum opinion at 13. Instead, the court found that the evidence in the record established conclusively that Rally's had filed the Arkansas lawsuit in good faith. Accordingly, the district court held that Rally's had established, as a matter of law, its qualified privilege to file the Arkansas lawsuit.

The district court's interpretation of the nature of the interference privilege turned on its reading of *Sakowitz, Inc. v. Steck*,[11] the leading Texas Supreme Court case on the issue of privilege. In *Sakowitz*, Plaintiff Steck brought suit against her former employer, defendant Sakowitz, Inc., for tortious interference with employment contract. Steck alleged that Sakowitz, Inc. sent a letter to Steck's current employer, Oshman's Sporting Goods, Inc., complaining that Steck's employment was a breach

---

**9.** As we indicated in Part I.B. of this opinion, the district court cautioned the parties about approaching the court with discovery disputes. Toward that end, the parties attempted to amicably resolve their dispute. Only after that effort failed did the parties then seek guidance from the court.

**10.** As we noted at the outset, the district court never ruled on the discovery matters. We ex-

press no view on the propriety of the magistrate judge's order regarding the motions to quash and compel. *See supra* note 4 and accompanying text.

**11.** 669 S.W.2d 105 (Tex.1984), *overruled in not relevant part, Sterner v. Marathon Oil Co.,* 767 S.W.2d 686 (Tex.1989).

of her prior non-competition agreement with Sakowitz, Inc. The letter to Oshman's threatened Oshman's with a lawsuit: "The letter asked that Oshman's honor the terms of Sakowitz's contract and advised that failure to do so would leave no alternative 'but to consider legal action against your company.'" 669 S.W.2d at 107. Oshman's terminated Steck's employment upon receipt of the letter.

The trial court granted summary judgment for defendant Sakowitz. The Supreme Court of Texas affirmed, holding that Sakowitz had produced sufficient evidence to establish its privilege to assert its claim to the noncompetition agreement; the privilege defeated Steck's claim of tortious interference. Plaintiff Steck, the nonmoving party, had failed to produce evidence sufficient to raise "a fact question regarding the lack of justification for Sakowitz's letter to Oshman's." *Id.* at 108. The court held, therefore, that summary judgment was appropriate. On the question of privilege, the court emphasized that:

> One is privileged to interfere with a contract of another if it is done in the *bona fide* exercise of his own rights or if he has an equal or superior right in the subject matter to that of the plaintiff. This privilege extends to the actual assertion or threatened assertion of rights.
>
> Many lawsuits are asserted even though their validity is not absolute. The uncertainty of a dispute is often the reason that one resorts to the courthouse for resolution. In analogous situations, the failure to prevail after the institution and prosecution of a suit is not regarded as malicious. The basis for the rule is that *good faith litigants* should be assured access to the judicial system. One

may not recover in an action for malicious prosecution because the opposing party was mistaken about the strength of a claim.

The similar rule applicable to suits for tortious interference with contracts as stated in *Tidal Western Oil Corp. v. Shackelford,* 297 S.W. 279 (Tex.Civ.App. —Fort Worth 1927, writ ref'd), is:

> It would be a strange doctrine indeed to hold that a person having a well grounded and justifiable belief of a right in or to property may be held liable in damages because of an assertion of such a right.

*Id.* at 107 (emphasis added and citations omitted).

In *Sakowitz,* the allegedly tortious act was not the *actual* filing of a lawsuit but rather the *threatened* filing of a lawsuit. The district court considered that to be a distinction without a difference, and concluded, contrary to Rally's' contention, that the filing of a lawsuit is not *absolutely* privileged.[12] The district court reasoned that the *Sakowitz* court explicitly sought to protect only the "bona fide" (i.e. good faith) exercise of one's rights. Accordingly, the district court held that the privilege to file a lawsuit was qualified by a "good faith" requirement.

Although we ultimately decline to define the contours of the "good faith" qualification of the privilege, we note that like the district court, we are not persuaded that Texas law provides for an *un*qualified privilege to file a lawsuit. We see no principled basis for affording the bad faith assertion of rights any greater protection merely because the assertion of rights oc-

---

**12.** The district court was not persuaded by the intermediate appellate court decisions holding that a lis pendens is absolutely privileged. *See Prappas v. Meyerland Community Improvement Association,* 795 S.W.2d 794 (Tex.App.1990, reh'g of writ overruled) (filing of the lis pendens, even if not authorized by statute, is absolutely privileged and "does not turn on the presence or absence of good faith"); *Griffin v. Rowden,* 702 S.W.2d 692 (Tex.App.1985, writ ref'd n.r.e.) (lis pendens absolutely privileged). Nor are we. *See Hughes v. Houston Northwest Medical Center, Inc.,* 680 S.W.2d 838 (Tex.App.1984,

error ref'd n.r.e.), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985) ("Litigation is a powerful weapon, and when instituted in bad faith for the purpose of causing damage or loss, it is a wrongful method of interference."); *Garza v. Mitchell,* 607 S.W.2d 593, 600 (Tex.Civ. App.1980) ("In order to be tortuous interference with the contract of another the assertion of a right must be without right or justification, and 'the act of interference to be actionable must have been knowingly done without right or justifiable cause.'").

curs inside the courthouse rather than on the courthouse steps or elsewhere. That a civil complaint carries with it the imprimatur of the docket clerk's seal does not, in our view, make a bad faith lawsuit any less tortious or any more privileged.

In concluding that the privilege to interfere is qualified, the district court declined to subscribe to Shortstop's view that the filing of a lawsuit with malice, that is with tortious intent, under cuts the privilege. The district court observed that in its review of the case law, "bad faith nowhere is equated to tortious intent." Memorandum opinion at 12.[13] The court "read[ ] *Sakowitz* to say that an alleged interferer may claim a privilege as a defense to tortious interference if the allegedly interfering lawsuit was filed in good faith. That means the good faith belief [that] the interfering claim was colorable." *Id.*

Were *Sakowitz* the lockstitch on this issue, we would be inclined to agree that the filing of an interfering lawsuit is privileged if the asserted claim is either colorable or filed in the good faith belief that it is colorable. But we now find ourselves at the regal coronation of *Victoria,* and the district court, not being endowed—as we are not—with clairvoyance, did not anticipate her ruling impact.

In *Victoria Bank & Trust Co. v. Brady,*[14] decided months after the district court entered judgment in this case, the Supreme Court of Texas embroidered upon the legal fabric. There, the counter-plaintiff brought a tortious interference claim against the counter-defendant bank notwithstanding the assertion of the interference privilege. After a jury trial, judgment was entered in favor of the counter-plaintiff on the tortious interference claim. The Supreme Court of Texas affirmed, holding that the counter-defendant bank "did not establish the privilege (or defense) of legal justification or excuse for its 'interference' with the business relationship be-

tween" the counter-plaintiff and a business associate. *Id.* at 940.

The case involved banks, money, and cattle. The counter-defendant bank extended counter-plaintiff, Cattle Company (and its principal and business partners), a line of credit to operate its cattle business. This line of credit was secured by a promissory note by the joint venturers, a lien on Cattle Company's cattle, and other collateral not relevant here. The bank also extended Cattle Company a second, separate line of credit which was also secured by a lien in Cattle Company's cattle. Cattle Company subsequently became disenchanted with the bank and decided to close out this separate line of credit. Toward that end, Cattle Company paid the debt incurred under the separate line of credit. However, the bank refused to release the lien on the cattle.

Thereafter, Cattle Company sold some cattle to a buyer who paid Cattle Company with a draft drawn on the same bank. When Cattle Company presented the check to the bank for payment, the bank denied payment on the draft until Cattle Company agreed to deduct $40,000 and apply it toward the remaining debt on the promissory note relating to the first line of credit. Although the bank could have asserted its security interest on the cattle based on the security agreement relating to the first line of credit, the bank claimed a security interest under the security agreement in connection with the separate, already satisfied, line of credit. Under protest, Cattle Company deducted the $40,000 and the bank finally released the security interest on the cattle.

The bank won the race to the courthouse steps and filed suit against Cattle Company and others. The bank's victory in the race to the courthouse was a Pyrrhic one, however: the jury returned verdicts against the bank on all of its claims and in favor of Cattle Company on its counterclaims. In affirming the judgment on the tortious in-

---

13. The court did find there to be a dispute of fact on the issue of Rally's' motive for filing the Arkansas lawsuit but concluded that Rally's' motivation was immaterial to the privilege question. Memorandum opinion at 14.

14. 811 S.W.2d 931 (Tex.1991).

terference claim, the Supreme Court of Texas held that:

> Even if the Bank asserted a 'colorable legal right' against the Cattle Company for the proceeds of the [bank] draft, only good faith assertions of legal rights are protected. Since the Bank retained the September 21, 1984 security agreement and failed to release the security interest or lien after payment of the debt and asserted the security interest or lien in the cattle sold to [the buyer], we conclude that there is some evidence that the Bank did not act in good faith when it claimed a security interest or lien in the proceeds of the [bank] draft.

Id. at 940 (emphasis added). Interestingly, the court was not satisfied that the bank in fact had a valid (hence colorable) claim against Cattle Company in connection with the first line of credit. The court was persuaded that the evidence was sufficient to establish that the bank "did not act in good faith" when it asserted its right to the cattle, a right which it validly could claim. Presumably, the court concluded that the intentions of the party asserting a claim were germane to the privilege—that it was not enough that the party in fact had a colorable, or even valid, claim, but that the party had to assert its claim in "good faith."

We believe that Victoria has ripped a few stitches from the lining of the privilege cloak, but we decline to rethread the needle ourselves. We choose instead to remand this case to the district court to allow it in the first instance to make the necessary alterations, if any. In a case like this one where a district court had granted summary judgment prematurely, the Court of Appeals for the Third Circuit vacated the summary judgment without resolving the delicate state law issues. See Sames, 732 F.2d at 52. Instead, the court of appeals remanded, indicating that "[t]he district court ... remain[ed] free to reconsider its legal holding 'at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties to the district court.'" Id. (quoting Fed.R.Civ.P. 54(b)). We believe

that the Third Circuit's disposition is tailor-made for this lawsuit.

## III. READDRESSING

For the reasons stated in this opinion, we VACATE the district court's order granting summary judgment and REMAND this case for further proceedings not inconsistent with this opinion.