ARLINGTON TRUST COMPANY vs. JOSEPH D. CAIMI.

Middlesex. March 3, 1993. - April 13, 1993.

Present: LIACOS, C.J., NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Guaranty. Bankruptcy*, Fraudulent conveyance. *Uniform Commercial Code*, Secured creditor, Transfer of collateral, Good faith. *Trust*, Creation.

A settlement agreement between a bank, as a nonpossessory secured creditor, and a creditors' committee in the context of the debtors' bankruptcy did not constitute a disposition of collateral subject to the provisions of G. L. c. 106, § 9-504, and, absent any showing of bad faith, the bank's action did not prejudice its right to recover from the debtors' guarantor the amount of any deficiency. [845-847]

An attempted conveyance of land to the grantor as trustee was a nullity where, for want of a beneficiary, no trust ever came into existence. [847-848]

A guarantor's contractual obligation to pay the reasonable attorney's fees incurred by a secured party in asserting its rights under certain guaranty agreements was not conditioned on the secured party's production of contemporaneous time records. [848]

CIVIL ACTION commenced in the Superior Court Department on November 19, 1984.

A motion for partial summary judgment was heard by *Charles R. Alberti*, J., and the case was heard by *James F. McHugh*, J., on a master's report.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Howard M. Brown* (*Richard E. Gentilli* with him) for the plaintiff.

*Ann Brennan* (*Stephen E. Shamban* with her) for the defendant.

NOLAN, J. The plaintiff, Arlington Trust Company[1] (Arlington Trust), is a Massachusetts banking corporation with a usual place of business in Tewksbury. The defendant, Joseph D. Caimi, at all relevant times had been an officer and stockholder of Lawrence Packaging Corp., Lawrence Paperboard Corp., and Harriman Paperboard Corp. (corporations). In October, 1971, Caimi signed a promissory note in favor of Arlington Trust in the amount of $800,000. Caimi signed the note both individually, and as president and treasurer of Lawrence Packaging Corp. and Lawrence Paperboard Corp.

In August, 1982, Caimi signed a second note in favor of Arlington Trust in the amount of $2,000,000. Caimi signed the second note in his capacity as president of the Lawrence Paperboard Corp. In January, 1983, Caimi signed a third note in favor of Arlington Trust in the amount of $980,000. Caimi signed the third note individually and as chairman of Harriman Paperboard Corp.

The corporations executed intercorporate guaranties whereby each of them guaranteed the debts of the others to Arlington Trust. Between 1973 and 1975, Caimi signed a guaranty in favor of Arlington Trust as to all obligations of Lawrence Paperboard Corp. and Harriman Paperboard Corp. to Arlington Trust. As a result of the guarantees executed by Caimi and by and among the corporations, Caimi was indebted to Arlington Trust, as a guarantor, for all of the obligations of the corporations.

In March, 1984, the corporations filed for bankruptcy protection. On the date the bankruptcy petitions were filed, the corporations owed Arlington Trust in excess of $2,600,000 on the outstanding promissory notes and overdrafts. Arlington Trust's claims for monies owed were secured by assets of the corporations. At the time that the bankruptcy petitions were filed, the corporations had sufficient assets to satisfy Arlington Trust's claims.

---

[1]The plaintiff is now known as Shawmut Arlington Trust Company.

In July, 1984, the creditors' committee for the bankrupt corporations brought an adversary proceeding against Arlington Trust challenging its status as a secured party. The eight-count complaint alleged, among other things, that (1) "the guaranties, security interests and mortgages executed by the Debtors and delivered to Arlington [Trust] to secure performance of their various obligations were ultra vires and unauthorized," (2) "the guaranties, security interests and mortgages which [the corporations] granted to secure performance of the obligations of the other Debtors were void and unenforceable for want or failure of consideration," and (3) "the various guarantees, security interests and mortgages granted, the obligations incurred and the payments of money or transfers of property pursuant to the guaranties, security interests and mortgages lacked fair consideration and constituted fraudulent transfers."

Arlington Trust filed a motion for summary judgment on the above described counts. In August, 1987, the Bankruptcy Court entered summary judgment in favor of Arlington Trust on the committee's claim that the subject acts were ultra vires. The Bankruptcy Court judge denied Arlington Trust's motion for summary judgment on the other counts, but wrote that "[t]he Court finds that in the last analysis that Arlington [Trust] has failed to meet its ultimate burden of persuasion, although it has gone a long way toward showing that there is an absence of evidence to support the Committee's case and that the Committee may be unable to prove an essential element of its claim." The Bankruptcy Court judge continued, "In spite of this ruling, the Court has reservations about the Committee's ability to prove its case."

By way of motion dated January 8, 1988, the trustee sought an order to approve a settlement reached between Arlington Trust and the creditors' committee. Arlington Trust agreed to settle its secured claims, then totalling $2,100,000, for $1,750,000. The settlement agreement provided that "[t]he payments described in this paragraph shall be in settlement of the Debtors complaint and the Committee Complaint and all claims which Arlington [Trust] has against the

three Debtors, provided however, that nothing contained herein shall be deemed to be a settlement or waiver of claims that Arlington [Trust] has against [Caimi] on account of his guarantees of the debts of the Debtors to Arlington [Trust]."

Caimi filed a limited objection to the proposed settlement. Caimi noted that the combined assets of the corporations were sufficient to pay in full the amount of Arlington's claim. Caimi argued that, "[s]ince there are sufficient funds in the estate of the Debtors to pay the entire claim being asserted by [Arlington Trust] and since the Debtors were and continue to be the primary obligors of the obligation to [Arlington Trust], it is unequitable that [Caimi] has potential liability for an obligation in excess of $380,000.00 as a result of this settlement." Notwithstanding Caimi's objection, the Bankruptcy Court judge approved the settlement.

We now consider the proceedings in the courts of the Commonwealth. On November 19, 1984, Arlington Trust commenced suit against Caimi, in his individual capacity, in the Superior Court in Middlesex County. Arlington Trust alleged that Caimi, as guarantor of the corporate obligations described above, was indebted to Arlington Trust and liable for outstanding monies owed, including reasonable attorney's fees.[2] On December 3, 1984, Arlington Trust amended its complaint. Arlington Trust additionally alleged that Caimi, on May 8, 1984 — approximately three months after the corporate bankruptcy proceedings commenced — fraudulently conveyed his interest in an improved parcel of land in North Andover to himself as trustee of JDC Realty Trust. Arlington Trust asked the Superior Court to set aside the transfer as violative of G. L. c. 109A, §§ 5-7 (1990 ed.).

On April 26, 1985, Arlington Trust filed a motion for summary judgment, or in the alternative for judgment on the pleadings. A judge in the Superior Court allowed the motion as to Caimi's personal liability on the notes and guarantees

---

[2]Arlington Trust's claim for attorney's fees was predicated on a clause in Caimi's written guarantee where he promised to save it harmless for costs incurred in enforcing its rights under the agreements.

but left unresolved the amount of Caimi's liability and the issue concerning the fraudulent conveyance.

By order dated November 15, 1989, the action was referred for hearing before a master. In January, 1990, the master held hearings at which the parties introduced evidence. The master filed his report on June 25, 1990, and concluded that Arlington Trust's settlement of the suit brought by the creditors' committee was an unreasonable disposition of collateral and served to discharge Caimi's personal liability. The master also found that Arlington Trust breached the duty of good faith and fair dealing it owed to Caimi by settling the creditors' committee claim for less than the full amount of its claim against the estates of the corporations.

The master denied Arlington Trust's request for reasonable attorney's fees because its attorney had failed to submit detailed and contemporaneous time records. The master found that Arlington Trust's attorneys "offered a narrative bill" in support of its request "which did not contain a breakdown of which attorney or paralegal performed the services, the time spent, or the hourly rate of the person performing the service."

As to the fraudulent conveyance, the master found that the conveyance was not fraudulent because "Caimi had no personal obligations, and the assets securing the corporate debt were more than sufficient to cover the obligations" Caimi had personally guaranteed. With regard to the trust to which Caimi conveyed the subject property, the master found that, "[a]lthough there never was a written beneficiary to the Trust, it was always Mr. Caimi's intent to have his daughter be beneficiary."

Arlington Trust subsequently filed objections to the master's findings and requested additional findings. Arlington Trust argued that the master erred in concluding that Arlington Trust acted in a commercially unreasonable manner by settling the lawsuit for an amount less than its claim against the bankrupt corporations' estates. Arlington Trust argued, among other things, that the master's findings were

erroneously premised on the applicability of G. L. c. 106, § 9-504 (1990 ed.).

Arlington Trust also objected to the master's finding pertaining to the property conveyance. Among other things, Arlington Trust argued that the property conveyance failed because "Caimi never designated in writing the beneficiary of the trust, and thus the trust never existed and could not receive the property." Arlington Trust further argued that the master's failure to award attorney's fees was clearly erroneous. Caimi filed a motion with the Superior Court for confirmation and adoption of the master's report.

A judge in the Superior Court, by order dated March 15, 1991, and amended April 5, 1991,[3] confirmed the master's report with one exception. As to the disposition of the collateral the judge wrote, "Uniform Commercial Code Article 9-504, contrary to [Arlington Trust's] contention, is not limited to disposition by a creditor who takes possession of the collateral. The broad language of the first sentence of Art. 9-504(1) contain[s] no such limitation. Indeed, inclusion of the phrase 'otherwise dispose of' and the appearance of a similar phrase in Art. 9-504(3) show that the obligation to proceed in a commercially reasonable manner was designed to be extremely broad." The judge continued, "Whether the collateral has been disposed of in a commercially reasonable manner is a question of fact on which the creditor has the burden of proof. . . . The master found, on sufficient evidence, that [Arlington Trust] had not met that burden." (Citation omitted.)[4]

As to the attorney's fees, the judge ruled that the master erred in denying attorney's fees because Arlington Trust had failed to submit contemporaneous time records. The judge wrote, "While contemporaneous time records are required in

---

[3]In his amended order, the judge noted internal inconsistencies in the master's report and called on the master to review and explain the inconsistencies.

[4]The judge also rejected Arlington Trust's argument that the Bankruptcy Court's approval of the settlement rendered it conclusively reasonable.

many federal courts when court-ordered fees from a public source are at issue . . . and while such records no doubt are extremely helpful in establishing the value of services rendered, no Massachusetts case suggests that the existence of such records is a condition precedent to an award of fees under a contract. . . . Thus while the Master would have been warranted in drawing inferences adverse to [Arlington Trust] as a result of the absence of time records, it appears that he disallowed any award of fees because [Arlington Trust] produced no such records and that was an error." (Citations omitted.)

The judge adopted and confirmed the master's finding on the issue concerning the fraudulent transfer of property. The judge recommitted the issue to the master for further hearings and findings as to attorney's fees.

In response to the judge's order, the master, on June 28, 1991, issued an amended report. The master found that Arlington Trust was entitled to fair and reasonable attorney's fees in the amount of $118,763. In response to the judge's request for clarification of inconsistencies, the master clarified and affirmed his earlier finding — Arlington Trust is not entitled to judgment against Caimi. The master also made alternative findings as to the amount of liability in the event his finding as to Caimi's liability was disallowed.

In a further order, the judge confirmed the master's amended report and wrote, "In the event that that judgment is reversed on appeal, judgment shall enter for [Arlington Trust] in the amount of $178,956.94 in accordance with the ultimate finding . . . of the Master's report, as amended." The parties appeal. We took the case on our own motion.

1. *The settlement.* On appeal, Arlington Trust argues that the Superior Court judge erred in ruling that its settlement of the adversary proceeding brought by the creditors' committee in the Bankruptcy Court was an unreasonable disposition of collateral, see G. L. c. 106, § 9-504, thereby prejudicing Arlington Trust's right to recover any deficiency against Caimi, the guarantor. The gist of Arlington Trust's argu-

ment is that § 9-504 does not apply because it was not in possession of the collateral. We agree.

Section 9-504 is entitled, "Secured Party's Right to Dispose of Collateral After Default; Effect of Disposition," and it provides, in pertinent part: "A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." Subsection (3) provides that any "[d]isposition of the collateral . . . must be commercially reasonable." Section 9-507 renders a secured party liable for losses caused by "a faulty disposition of secured collateral only if 'the secured party is not proceeding in accordance with the provisions of this part.'" *Connecticut Nat'l Bank* v. *Douglas*, 221 Conn. 530, 540-541 (1992), quoting Conn. Gen. Stat. § 42a-9-507. Accord G. L. c. 106, § 9-507 (1).

A necessary prerequisite to a commercially unreasonable disposition of collateral pursuant to part 5 of art. 9 of the Uniform Commercial Code is possession, for one cannot dispose of what one does not have. Indeed, as the Supreme Court of Connecticut recently stated, "Article 9 imposes no duties on a nonpossessory secured lender with regard to the disposition of the secured collateral." *Id.* at 541. As there is no dispute that Arlington Trust was a nonpossessory secured lender prior to the time the corporations filed for bankruptcy protection, and given that "the secured debtor's bankruptcy may impair, but does not enlarge, the secured lender's access to the collateral," *id.*, quoting 2 J. White & R. Summers, Uniform Commercial Code § 25-12, at 471-472 (3d ed. 1988), we hold that a secured creditor's settlement with a creditors' committee pursuant to an adversary proceeding in the context of the debtor's bankruptcy does not constitute a disposition of collateral pursuant to G. L. c. 106, § 9-504. As Arlington Trust expressly reserved its right to proceed against Caimi in the settlement agreement, which the Bankruptcy Court judge approved, the settlement does not serve to discharge Caimi of liability. See G. L. c. 106, § 3-606 (1) (*b*) (1990 ed.).

Caimi's claim that Arlington Trust's settlement of the adversary proceeding was a violation of its duty of good faith, see G. L. c. 106, § 1-203 (1990 ed.), is meritless. Caimi's argument is premised on his belief that Arlington Trust would fend off the challenge of the creditors' committee and have its claims paid out of the estates of the bankrupt corporations, thereby discharging Caimi. In support of his argument, Caimi points to the Bankruptcy Court judge's memorandum of decision which cast into doubt the merits of the claims of the creditors' committee.

We need go no further than to note that the Bankruptcy Court judge's reflections pertained to claims of the creditors' committee that survived Arlington Trust's motion for summary judgment. While Arlington Trust might ultimately have prevailed on the merits of these claims, such a conclusion is not a certainty. Given the circumstances, and absent any evidence of collusion or impropriety between the parties in reaching the settlement, we cannot say that Arlington Trust violated a duty of good faith in settling the adversary proceeding with the creditors' committee. See *McCarthy, Kenney & Reidy, P.C.* v. *First Nat'l Bank*, 402 Mass. 630, 635 (1988) (definition of good faith in Uniform Commercial Code does not require commercial reasonableness).

Accordingly, we reverse the judgment of the Superior Court as to the defendant's liability. We remand for the entry of judgment for Arlington Trust consistent with the alternative disposition contained in the judge's order dated October 15, 1991.

2. *Property transfer.* Arlington Trust argues on appeal that the master erred in affirming the validity of the property conveyance whereby the defendant transferred his interest in a developed parcel in North Andover to himself as trustee for the JDC Realty Trust. Arlington Trust argues that the conveyance is a nullity as the receptor trust never came into existence for want of a beneficiary. We agree.[5]

---

[5]Given our disposition on the conveyance, we need not consider the fraudulent conveyance issue.

"Where the owner of property declares himself trustee for persons to be selected by him, the selection to be wholly within his control, no trust is created and the settlor continues to hold the property for his own benefit." 2A Scott, Trusts § 112, at 157 (4th ed. 1987). As Caimi never designated a beneficiary as required by the declaration of trust,[6] the JDC Realty Trust never came into existence and the attempted conveyance fails for lack of a cognizable recipient. See *Kaufman* v. *Federal Nat'l Bank*, 287 Mass. 97, 98-99 (1934). Accordingly, the master's finding on this issue was error.

3. *Attorney's fees*. On cross appeal, Caimi argues that the judge erred in disallowing the master's initial finding that Arlington Trust was not entitled to attorney's fees because it failed to file contemporaneous time records. We disagree.

In the present case, the defendant agreed to pay Arlington Trust's reasonable legal fees and expenses it incurred in asserting its rights under the interlocking agreements. The defendant did not condition his liability for these costs on Arlington Trust's production of contemporaneous time records. While contemporaneous time records go a long way to document a claim for attorney's fees, it cannot be said that such time records are, as a matter of law, a condition precedent to such an award. See *Mulhern* v. *Roach*, 398 Mass. 18, 27 (1986). There was no error in the award of reasonable fees to Arlington Trust.

---

[6]The declaration of trust provided: "The original beneficiaries of this trust are listed as beneficiaries in the SCHEDULE OF BENEFICIARIES this day executed by the Trustee and filed with the Trustee, and their interests are as therein stated. Such Schedule need not be recorded with this trust. The interest of the beneficiaries under this trust shall be inalienable, shall not be subject to anticipation, shall be free from interference or control of creditors and shall not pass by virtue of any assignment for the benefit of creditors or be liable to attachment, execution or other process of law. A beneficiary may assign his interest hereunder only with the unanimous consent of all the beneficiaries and Trustees then existing, which consent need not be recorded in any registry office."

The judgment of the Superior Court is reversed in part, and affirmed in part. The case is remanded to the Superior Court for action consistent with this opinion.

*So ordered.*